**WO**                                                    JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Crawford, | No. CV-23-02209-PHX-MTL (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Officer Robles, et al., | |
| Defendants. | |

Plaintiff Christopher Crawford, who is currently confined in the Arizona Prison Complex (ASPC)-Lewis, Barchey Unit, brought this pro se civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) Officers Victor Robles and Aaron Rapaport. (Doc. 11.) Before the Court are the following motions:

• Plaintiff's Motion to Disclose Rule 26.1 Hardship/Temporary Restraining Order (Doc. 75);

• Plaintiff's Motion of Hardship/Amendment (Doc. 77);

• Defendants' Motion for Sanctions (Doc. 85); and

• Defendants' Motion for Summary Judgment (Doc. 86).*

---

* Also before the Court are Plaintiff's Motion for Relief from ADCRR (Doc. 108), Motion for Medical Hardship (Doc. 117), and Motion for Courts to Impose Constitutional Rights (Doc. 118), which are not fully briefed.

The Court will deny all pending Motions and reopen discovery for the limited purposes of obtaining a Release of medical records from Plaintiff and deposing Plaintiff.

I.   **Background**

In his First Amended Complaint, Plaintiff alleged that, on September 26, 2022, he was the last prisoner to receive his meal in the dining hall and, although prisoners are supposed to receive fifteen minutes to eat their meals, officers "dismissed' the dining hall just minutes after Plaintiff began to eat. (Doc. 11 at 3–4.) Plaintiff alleged that one of the officers arbitrarily activated the Incident Command System, and other officers arrived and began to clear prisoners out of the dining hall. (*Id.* at 4–5.) Plaintiff stated that he continued to eat his meal and did not pose a threat, but Defendants Robles and Rapaport stormed into the dining hall, approached Plaintiff, slammed his head onto the table, handcuffed him, forced him up, and then slammed him into the wall of the dining hall. (*Id.* at 5.) Plaintiff stated that, as a result of Defendants' actions, he suffered a head injury, possible concussion, and mental and psychological turmoil. (*Id.* at 3.) Plaintiff stated that he was not immediately examined or treated by medical staff after the incident, and, although he is diagnosed as seriously mentally ill (SMI), his mental health needs were not addressed. (*Id.* at 6, 8.)

Plaintiff alleged that, after the Captain reviewed surveillance footage of the incident, he determined Plaintiff had not violated any policy and was not in the wrong, so no disciplinary action was taken against him. (*Id.* at 6.)

Upon screening of the First Amended Complaint, the Court determined Plaintiff sufficiently stated an Eighth Amendment excessive force claim against Defendants in their individual capacities and ordered them to answer Count One. (Doc. 14 at 4.)

II.   **Plaintiff's Motions for Injunctive Relief**

   A.   **Motion to Disclose Rule 26.1 Hardship/Temporary Restraining Order**

Plaintiff asserts that, in January 2025, he was transferred back to the Meadows Unit, where the alleged assault by Defendants occurred. (Doc. 75 at 1.) Plaintiff reported to Special Security Unit Officer Castrejon that he did not feel safe at Meadows and that he

had an ongoing legal issue with Defendants, who still worked at the Meadows Unit. (*Id.*) Plaintiff states that, in response to his concerns, Castrejon placed Plaintiff "in the hole" for two weeks, and, when he was removed, he again informed Castrejon that he was assaulted on the yard and did not feel safe at Meadows. (*Id.* at 2.) Castrejon offered to conduct a mediation between Plaintiff and Defendants, and, when Plaintiff refused, he was returned to the hole. (*Id.*) Plaintiff remained in detention as of the end of March 2025, when he filed his Motion, and, in detention, he is denied access to his legal and religious property. (*Id.* at 2–3.)

**B.     Motion of Hardship/Amendment to the Temporary Restraining Order**

Plaintiff states that, on April 10, 2025, he was denied a medical diet, which is prescribed to treat his IBS and diabetes conditions. (Doc. 77 at 1.) As a result, Plaintiff went without a meal, and he states that prison officials are not feeding him. (*Id.* at 2.) Plaintiff alleges that this treatment is retaliation for his lawsuit and his expressed concerns that he does not feel safe at the Meadows Unit. (*Id.*)

**C.     Discussion**

"When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Center*, 810 F.3d 631, 633 (9th Cir. 2015). A court should not grant an injunction "when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997); *see Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (affirming denial of an injunction request based on alleged retaliatory conduct unrelated to the basis of a prisoner's § 1983 claim for denial of medical care).

As the Court previously explained, Plaintiff's allegations that prison officials are retaliating against him in response to his lawsuit are unrelated to the excessive-force claim in this case. (*See* Doc. 50 at 3–4.) The Court therefore does not have authority to issue an injunction related to alleged retaliatory conduct. If Plaintiff wants to bring a First Amendment retaliation claim based on alleged conduct by prison officials, he must raise

the retaliation claim in a new, separate lawsuit.

In addition, Plaintiff's requests for injunctive relief relate to conditions of confinement and alleged retaliation at the Meadows Unit; however, Plaintiff has since transferred out of that unit. On August 26, 2025, Plaintiff filed his Notice of Change Address indicating that he was moved to the Barchey Unit. (Doc. 112.) As such, Plaintiff is no longer housed in the facility where Defendants work, thereby mooting his request for injunctive relief. *See Dilley v. Gunn*, 64 F.3rd 1365, 1368 (9th Cir. 1995) (a prisoner's transfer to a different prison while conditions of confinement claims are pending moot any claims for injunctive relief); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).

Plaintiff's Motions for Hardship and for a Temporary Restraining Order seeking injunctive relief will be denied.

## III.   Motion for Sanctions

Defendants seek dismissal of this action under Federal Rule of Civil Procedure 37 as a sanction for Plaintiff's failure to sign an authorization to release his medical records as ordered by the Court. (Doc. 85.)

### A.   Legal Standard

Rule 37(b)(2)(A)(v) provides that sanctions may include "dismissing the action or proceeding in whole or in part." But "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986).

"A district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987); *see In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 460 F.3d at 1233 (applying *Malone* factors to dismissal for violation of discovery orders under Rule 37). "The sub-parts of the fifth factor are whether the court has considered lesser sanctions,

- 4 -

1  whether it tried them, and whether it warned the recalcitrant party about the possibility of
2  case-dispositive sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482
3  F.3d 1092, 1096 (9th Cir. 2007) (footnote citation omitted); *see Malone*, 833 F.2d at 130.

### B.     Relevant Facts

In his First Amended Complaint, Plaintiff alleged that, as a result of Defendants' alleged use of excessive force, he suffered a head injury, a possible concussion, and mental and psychological turmoil.  (Doc. 11 at 3.)

On February 6, 2025, Defendants served a Request for Production on Plaintiff asking him to sign the attached Authorization for Release of Protected Health Information ("the Release").  (Doc. 73 at 1; Doc. 73-1 at 6.)  The Release sought Plaintiff's medical records dated "1/8/10 to 1/31/25," and it required Plaintiff's signature and date and the signature of a witness.  (*Id.*; Doc. 85-1 at 2.)  Plaintiff did not return a signed Release.  (Doc. 73 at 2.)

Instead, Plaintiff sent defense counsel a "Motion to Object [to] Counsel's Request for Production to Plaintiff."  (Doc. 73-2 at 3–5.)  Plaintiff did not send this document to the Court for filing.  In this document, which is dated March 4, 2025, Plaintiff stated that he objected to his medical information being released, he believed release of his records would violate HIPAA, and he alleged that defense counsel had "mismanaged" his medical information in the past.  (*Id.* at 3–4.)

On March 25, 2025, after the time for Plaintiff to respond to the Request for Production had passed, Defendants filed a Motion to Compel, asking the Court to compel Plaintiff's response to the Request for Production seeking the Release.  (Doc. 73.)

On April 15, 2025, the Court granted Defendants' Motion to Compel.  (Doc. 80.)  The Court found that "Plaintiff's medical records are relevant and proportional to the needs of this case."  (*Id.* at 2.)  The Court ordered Plaintiff to execute and return the Release to defense counsel within 14 days.  (*Id.* at 2–3.)

Thereafter, Plaintiff returned the Release, which he dated April 17, 2025.  (Doc. 85 at 2.)  But Plaintiff did not sign his name on the Release; rather, he marked three "Xs" on

- 5 -

the signature line. Nor did Plaintiff include the required witness signature on the Release. (*Id.*) Plaintiff sent a letter to defense counsel with the Release. (Doc. 90 at 5.) In this letter, Plaintiff explained that the information defense counsel preprinted on the Release states that Plaintiff is housed in "ASPC South Unit"; however, Plaintiff is housed in Meadows Unit A89. (*Id.*) Plaintiff wrote that, because of this error stating the wrong facility, no one will sign the Release as a witness. (*Id.*) Plaintiff wrote that the Release "needs to be re-printed to say Facility/Unit: Meadows A89. Plaintiff not [at] fault, but it can be fix[ed] in good faith I hope." (*Id.*)

Meanwhile, also on February 6, 2025, Defendants noticed Plaintiff's telephonic deposition for February 27, 2025. (Doc. 74 at 1.) Plaintiff appeared for the deposition, was sworn in, and then, in response to questions about medication he had taken that day, stated that the medications prevent him from having a clear mental state and providing clear testimony. (*Id.* at 2.) Defense counsel explained that the deposition could not proceed, and Plaintiff stated that he would send defense counsel a letter to let them know the best time when he was not medicated and would be able to think clearly. (*Id.*)

On March 13, 2025, Defendants filed a Motion to Compel Discovery, asking the Court to compel Plaintiff to appear and provide testimony at a deposition. (Doc. 68.) The Court found that Defendants properly noticed the deposition and Plaintiff had ample time to request accommodations or a different date; thus, Plaintiff's claimed inability to testify due to medication constituted a failure to answer questions for purposes of Rule 37. (Doc. 74 at 2.) The Court granted Defendants' Motion to Compel and ordered Plaintiff to appear for a deposition at a time to be noticed by Defendants. (*Id.* at 3.) The Court directed that if Plaintiff requires accommodations due to disabilities or medication, he must notify Defendants in writing at least seven days before the scheduled deposition and specify the necessary accommodations. (*Id.*)

On May 12, 2025, Defendants filed their pending Motion for Sanctions, arguing that, in providing an improperly executed Release, Defendants cannot secure Plaintiff's medical information, and this prevents Defendants from reviewing medical records central

to the claims at issue because the "extent of injury suffered by an inmate" is one of the factors considered in analysis of an Eighth Amendment excessive force claim. (Doc. 85 at 3–4.) Defendants claim they are severely prejudiced by Plaintiff's noncompliance with the Court's discovery Order because, without Plaintiff's medical records, they cannot properly prepare for trial, and Plaintiff's refusal to provide his medical information prevented Defendants from scheduling a deposition. (*Id.* at 2, 4.) Defendants maintain that Plaintiff's failure to comply with the Court's Discovery Order was willful as evidenced by his mark of "Xs" on the Release instead of his authentic signature, which he has used on other documents. (*Id.* at 3.)

With his opposition to Defendants' Motion for Sanctions, Plaintiff submits the copy of the letter he sent to Defendants when he returned the Release, which asked Defendants to re-print the Release with the correct facility. (Doc. 90 at 5.)

Defendants reply that Plaintiff's reasons for not signing the Release "are pretextual—Plaintiff offers no explanation why he did not include his genuine signature on the HIPAA release." (Doc. 95 at 2.) Defendants state that, if Plaintiff had a problem finding a witness to sign the Release, he could have contacted the Court or Defendants, but he failed to do so and "simply provided the deficient HIPAA release to Defendants and provided no explanation." (*Id.*) Defendants contend that they were therefore forced to request sanctions or proceed to trial without necessary discovery. (*Id.*)

**C.   Discussion**

In addressing Defendants' Motion for Sanctions, the Court is cognizant of Plaintiff's status as a pro se prisoner litigant. *See Wilson v Boldt*, No. EDCV 11-1359-PSG (JPR), 2018 WL 11354850, at *4 (C.D. Cal. Oct. 26, 2018) ("[a] court may consider a party's pro se status in evaluating the willfulness of discovery violations and in weighing the other factors regarding dismissal") (citations omitted). "Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (citations omitted). "This rule relieves pro se litigants from the strict application of

procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." *Id.*; *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (pro se litigants are to be "afforded extra leeway in meeting the procedural rules governing litigation").

In addition, the Court considers Plaintiff's averment that he is SMI. (Doc. 11 at 6.) Defendants do not challenge Plaintiff's claimed mental health condition. Indeed, Defendants relied on Plaintiff's mental illness as grounds for refusing to confer with Plaintiff—as required by the Court's Scheduling Order and the Local Rules—prior to filing their Motions to Compel regarding the Release and a deposition. (Doc. 33 at 3.) *See* LRCiv 7.2(j) (no discovery motion will be considered unless moving counsel certifies that, after personal consultation and sincere efforts to do so, the parties cannot resolve the matter). In their Motions to Compel, Defendants stated they did not try to confer with Plaintiff because "such effort would be unproductive, by reason of Plaintiff's testified and sworn incapacity." (Doc. 68 at 2; Doc. 73 at 2.)

Defendants seek dismissal under Rule 37. To dismiss an action under Rule 37, a court must find willfulness, fault, or bad faith. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 n.1 (9th Cir. 2012) ("[i]n *Yeti by Molly*, we implicitly recognized this requirement that the district court make a finding as to willfulness, fault, or bad faith when a Rule 37(c)(1) sanction results in dismissal of a cause of action"). The Court is hesitant to make such a finding here, where Plaintiff's mental health condition may have interfered with his ability to participate in discovery. *See Lauren S. v. Woodlick*, No. 13-CV-4164 (NGG) (RML), 2014 WL 5878108, at *6 (E.D. N.Y. Nov. 12, 2014) ("[t]he court is reluctant to [find willfulness] here . . . where the possibility remains that Plaintiff's failure to remain in contact with her counsel and to appear for her deposition is the result of mental illness, rather than willfulness or bad faith"). If Plaintiff's mental health condition is a basis for Defendants to avoid the Order requiring counsel to confer with Plaintiff, it is certainly a basis for exercising extra caution before imposing the harshest sanction available.

Defendants do not deny receiving Plaintiff's letter asking them to re-print the Release with the correct facility listed. (*See* Docs. 90, 95.) Thus, contrary to Defendants' assertion, Plaintiff provided Defendants with an explanation as to why he could not properly execute the Release. Plaintiff's letter to Defendants, asking that they reprint the Release, demonstrates his willingness to execute the Release for his medical records. For this reason, the Court cannot make a finding of willfulness or bad faith.

Plaintiff's handwritten letter requesting a reprinted Release was clear and straightforward, yet there is no evidence that Defendants responded to Plaintiff's request and sent him a reprinted Release with the proper facility listed. Consequently, the Motion for Sanctions is unwarranted as it relates to the Release, and the Court does not reach the *Malone* factors.

With respect to the deposition, the Court ordered Plaintiff to appear at "a deposition to be noticed by Defendants," but there is no evidence that Defendants thereafter ever set a date for a deposition and noticed Plaintiff. (Doc. 74 at 3.) Defendants assert that, without Plaintiff's medical records, they were "prevented . . . from obtaining information relevant to scheduling an appropriate deposition." (Doc. 85 at 4.) But they do not explain how the lack of Plaintiff's medical records prevented them from scheduling a deposition, and Defendants did not obtain the medical records prior to the first time they attempted to depose Plaintiff. Moreover, the claim at issue is an excessive force claim, not a medical care claim. While the "extent of injury" is one factor in the Eighth Amendment excessive force analysis, it is not determinative because a plaintiff may sustain an excessive force claim even in the absence of serious injury. *See Hudson v. McMillian*, 503 U.S. 1, 7, 9 (1992) ("[t]he malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evidenced").

Defendants' failure to schedule a deposition precludes a finding that Plaintiff failed to comply with the Court Order to appear for a deposition, and there can be no finding of

willfulness or bad faith on Plaintiff's part. The Motion for Sanctions as it relates to a deposition is therefore unwarranted, and the Court does not reach the *Malone* factors.

Finally, dismissal for failure to comply with a discovery order in this instance would be improper. "District judges have an obligation to warn the plaintiff that dismissal is imminent." *See Johnson v. U.S. Dep't of Treasury*, 939 F.2d 820, 825 (9th Cir. 1991) (finding that dismissal for lack of prosecution was premature because the district court should have notified the plaintiff that his case would be dismissed if he failed to appear for a deposition and settlement conference) (internal quotation omitted); *Malone*, 833 F.2d at 131–32 ("[t]he district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions[,]" and one of the factors particularly relevant to whether a district court has considered alternatives is "[d]id the court warn the plaintiff of the possibility of dismissal before actually ordering dismissal?"). Neither of the Court's Orders granting Defendants' Motions to Compel included a warning to Plaintiff that noncompliance could result in dismissal of the case. (*See* Docs. 74, 80.) Dismissal as a sanction would therefore be premature.

For the above reasons, Defendants' Motion for Sanctions will be denied.

**IV. Reopened Discovery**

It is nonetheless necessary for Defendants to access some medical records and depose Plaintiff so that the relevant facts and issues can be fleshed out. The Court will sua sponte reopen discovery for the limited purposes of obtaining a Release for Plaintiff's medical records and deposing Plaintiff. *See, e.g.*, *Price v. Wiese*, No. 3:16-cv-1174-CAB-AHG, 2019 WL 6918201, at *1 (S.D. Cal. Dec. 19, 2019) ("the Court sua sponte reopened discovery . . . for the limited purpose of permitting the parties to take one another's depositions and extended the pretrial motions deadline accordingly"). The Court will direct Defendants to prepare a corrected Release, with a request for records covering a limited time frame; to set up a procedure for Plaintiff to execute the Release; and to reschedule Plaintiff's deposition.

The Court will deny Defendants' Motion for Summary Judgment without prejudice to refiling after the reopened discovery period.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion to Disclose Rule 26.1 Hardship/Temporary Restraining Order (Doc. 75), Plaintiff's Motion of Hardship/Amendment (Doc. 77), Defendants' Motion for Sanctions (Doc. 85), and Defendants' Motion for Summary Judgment (Doc. 86).

(2) Plaintiff's Motion to Disclose Rule 26.1 Hardship/Temporary Restraining Order (Doc. 75) and Motion of Hardship/Amendment (Doc. 77) are **denied**.

(3) Defendants' Motion for Sanctions (Doc. 85) is **denied**.

(4) Defendants' Motion for Summary Judgment (Doc. 86) is **denied without prejudice**.

(5) Discovery is reopened for **60 days from the date of this Order** for the limited purposes of obtaining a medical Release from Plaintiff and deposing Plaintiff.

(6) Defendants must reprint a Release form that includes:

    (a) Plaintiff's current housing location;

    (b) a request for "Records of the period from **8/1/2021 to 1/1/2025**"; and

    (c) all other correct information.

(7) Defendants must coordinate with the Deputy Warden at Plaintiff's current housing facility to have the Deputy Warden or Plaintiff's assigned Correctional Officer III:

    (a) review the reprinted Release with Plaintiff;

    (b) confirm all information, including the time period for records set herein, is correct, and if any information is incorrect, the Deputy Warden or CO III must work with Plaintiff to contact defense counsel immediately to obtain a corrected Release;

    (c) allow Plaintiff to sign and date the Release; and

    (d) sign and date the Release as a witness.

(8) Plaintiff must send the executed Release to defense counsel without delay.

(9)     Prior to scheduling Plaintiff's deposition, defense counsel must confer with Plaintiff regarding his medication regimen to determine the best time of day to take the deposition.

(10)    This matter remains referred to the Magistrate Judge for re-setting a dispositive motion deadline after the reopened discovery deadline.

Dated this 3rd day of October, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge